MRS. SALLIE C. DAY AND HUSBAND *v.* NEW ORLEANS PACIFIC RAILWAY CO.

1. Where one suffers a Railway Company to enter upon his lands, lay its track across them, and run its trains, all without protest or objection, he cannot subsequently hold such Railway Company as a mere trespasser, because there has been no formal grant of the right of way.

2. One who was a Director of such Railway Company, and active in the management of its affairs, at the time the line is being constructed, and the track is laid across a plantation belonging to himself, and said track is unfenced; all thus done will be considered as authorized or done by him.

*Appeal from District Court, Parish of Rapides*

*White & Thornton* for plaintiffs and appellants.

*Andrews & Foster* for defendant and appellee.

IRION, J.—This is a suit to recover of the defendant Company the value of stock killed by its trains on October 11th, and November 13th, 1882. The plaintiff contends that the defendant is responsible because the killing of petitioners' animals was caused by the negligence and carelessness of the employees of the Railway Company, because the said Railway Company has no right of way through her plantation, where the animals were killed, and was therefore a trespasser at the time of killing, and because even if not a trespasser in the eyes of the law, yet having no right of way, the Railway Company is legally liable for all injury to the property of petitioner occasioned by the running of their trains through the said Experiment Plantation. We have carefully examined the evidence in the record and we think the plaintiff has failed to show that the killing was caused by the carelessness and negligence of the employees of the defendant. As the burden of proof is on the plaintiff to show these facts affirmatively, under ordinary circumstances the plaintiff is not entitled to a judgment because of the negligence of the employees of the of the defendant.

The next position of the plaintiff is, that the ordinary rule governing the responsibility of railway companies do not apply to this case, because the defendant had no right of way through

the property of plaintiff, and is therefore responsible as a trespasser for all injuries to the property, whether the result of negligence or not.

We think the legal proposition is correct, if the defendant was a trespasser at the time the injury complained of occurred.

The evidence shows that the plantation on which the stock were killed was owned in part by Emory Clapp, who was the father of the plaintiff; that Emory Clapp was an active director of defendant Company; that he was greatly interested in the construction of New Orleans and Texas Pacific Railway, and that he aided, as an active, energetic director, in the prosecution of the work. It is stated by Mr. Kennard, one of the witnesses and a co-director, that "Mr. Clapp always impressed me as one of the most eager to have the road built, and gave repeated assurances with reference to whatever right of way might be needed through his premises. If possible, he manifested a greater interest than almost any member of the Board and expressed himself as having more interest, financially, in its success, than almost any other member of the Board, having property through which the road passed, the value of which was to be enhanced by the building of the road; with reference to the fencing, I would say that the queston was not mooted, that it was the settled policy of the Board, from beginning to the end, never to receive, under any conditions, rights of way with exceptional stipulations in favor of the grantors. It is to my personal knowledge, that whenever any attempt of that kind was made, it was promptly met and denied. Had any demand for fencing ever been made, it would undoubtedly, in accordance with the settled policy of the Board, have been denied. Mr. Clapp was a director most of the time that I served. He was an active, earnest worker for the Railroad."

Mr. Wheelock, another co-director, states: "That during all the time Mr. Clapp was a director, he took a leading part in all matters appertaining to the interest of the Railway Company. He never, at any meeting of the Board, or in my presence at any time or place, hesitated in expressing his entire willingness to grant the right of way with such grounds as might be necessary

and needful, free of charge, to the Railway Company through his property. About the fencing business, that question was never mooted, about putting up fences through his place or any other person's place; the right of way granted by Mr. Clapp was without conditions; no objection to same was ever made prior to the institution of this suit. It was the first time I ever heard of the question of a condition being required from the Company to put up a fence."

Other witnesses show that the road bed was constructed across the plantation of Mr. Clapp during his lifetime; that he died in 1880; that the plaintiff acquired the plantation in part by inheritance from him; that the Company proceeded to complete the road and run its trains thereon without objection or hindrance from her, and that prior to the killing of this stock, she made no demand upon the Company to fence its road through her premises.

Mr. Clapp, an active, energetic member of the Board of Directors, must have aided in establishing its settled policy for carrying on its operations. If, as Mr. Kennard testifies, it was the settled policy of the Board, while Mr. Clapp was a member, not to fence the track of the Company through any one's premises, and not to accept a right of way based upon conditions, it necessarily follows, that when Mr. Clapp allowed the defendant Company to enter his premises for the construction of that road, the permission was granted in accordance with the policy of the Board, as adopted and approved by himself, that the Company would not be required to fence its track. The premises of Mr. Clapp were entered and the construction of the road began under his directorship. It does not therefore seem possible that under these circumstances the defendant could have been a trespasser, even without a formal grant of the right of way. If so, Mr. Clapp, as a director, would have been a trespasser upon Mr. Clapp as the owner of a plantation. If it was trespass, he aided and abetted therein and induced his co-trespassers, by his counsel and advice, to commit the wrong. If, under these circumstances, Mr. Clapp were alive, he could not prosecute the defend-

ant as a trespasser, nor could he fix a greater responsibility upon the Railway Company than if he had made a formal written grant of the right of way.

It seems clear to us that the original entry of the defendant upon the Experiment Plantation was legal, with the full consent of the owner, and that the Railway Company was not a trespasser. The work was never abandoned; it was interrupted for a time and the presumption is, that the work done was preserved for the Company by the plaintiff in the condition in which it was left. It does not appear that she interfered with their work in any way after she became the owner of the property. She did not resume the actual occupation of the land which formed the road bed; she did not notify the Company that, as her father had given no right of way, she would object to the continuance of the work or that she would subject their operations to the condition of enclosing the road with a fence. She allowed the Company to renew the work, to complete it and to run its trains upon the road, without any objection whatever. She therefore ratified, by her silence, the terms of the original entry and acquiesced in the work as it was done. The terms upon which the defendant Company first entered the Experiment Plantation were, that it should have the privilege of building its road across the Experiment Plantation without fencing it in, as appears by this testimony of Wheelock and Kennard. By her silence the plaintiff ratified these terms when the work was renewed, and she acquiesced in the construction of the road, in accordance with those terms, inasmuch as the Company proceeded to run its trains over the road without a fence, and without objection from her. It is stated by Pierce, in his work on Railroads, page 169, that: "A clear acquiescence in the Company taking possession and constructing its works under circumstances making it his duty to resist, if he intended afterwards to set up that it was illegal, will be treated as a waiver." See also Mills on Eminent Domain, page 173, Sec. 140. The same author says in Sec. 142, after a lawful entry has been made by the consent of the

owner, the parties entering cannot be considered as trespassers, although they afterwards fail to pay the award.

After a full consideration of the law and the evidence in this case, we have reached the conclusion that the defendant is not a trespasser and is under no greater obligation to the plaintiff to pay for stock killed than it would be had the right of way been formally granted in writing before the entry of defendant upon the premises.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed.